IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 28, 2017

**STATE OF TENNESSEE v. TOBY S. EARHART**

**Appeal from the Circuit Court for Stewart County**
**No. 2014-CR-51     Larry J. Wallace, Judge**

_____

**No.  M2017-00474-CCA-R3-CD**

_____

A Stewart County jury convicted the defendant, Toby Shane Earhart, of two counts of child abuse.  On appeal, the defendant contends there was insufficient evidence to support the jury's verdict; the trial court erred by admitting a videotaped forensic interview of the victim; the trial court erred by excluding the defendant's expert witness; and the trial court erred when imposing consecutive sentences.  Based upon our thorough review of the record, we agree the trial court erred when admitting the forensic interview; however, this error was harmless.  Additionally, we conclude the evidence was sufficient to support the jury's verdict, the trial court did not abuse its discretion when excluding the defendant's expert witness, and the trial court properly ordered consecutive sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Elizabeth A. Fendley, Clarksville, Tennessee, for the appellant, Toby Shane Earhart.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ray Crouch, District Attorney General; and Sarah Wojnarowski and Brooke Orgain, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This appeal arises as a result of the defendant's abuse of the twelve-year-old victim.  The defendant was charged with one count of rape of a child and one count of aggravated sexual battery due to events occurring on October 26, 2011.[1]  The jury heard

_____

[1] Originally, the defendant was indicted for rape of a child, sexual battery by an authority figure, and aggravated sexual battery of a child under the age of thirteen.  Prior to trial, the State dismissed count

testimony that the defendant picked up the victim, B.E.[2], from school on October 26, 2011. Upon taking the victim home, the defendant proceeded to sexually abuse her. The jury convicted the defendant of two counts of the lesser-included offense of child abuse for which he received consecutive sentences of eleven months and twenty-nine days on each count.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Pretrial Hearings

Prior to trial, the defendant challenged the admissibility of a videotaped forensic interview conducted with the victim. The defendant argued the video was inadmissible because the interviewer, Ms. Stringfield-Davis, did not meet the requirements of Tennessee Code Annotated section 24-7-123. While possessing all the necessary training, Ms. Stringfield-Davis's degree was in business, a degree not listed under the requirements for a forensic interviewer. Furthermore, the defendant argued the tape was incomplete because the camera lost power near the conclusion of the interview. The trial court denied the defendant's motion and allowed the tape to be played at trial. The trial court ruled, based on extensive interviews, the information discussed after the camera stopped recording was ultimately cumulative and contained no exculpatory information. The trial court also noted Ms. Stringfield-Davis's qualifications were sufficient to satisfy the statute.

Additionally, the State moved to exclude the defendant's expert witness, Dr. B. Charles Ihrig. Dr. Ihrig would have testified to the errors in the interview and the unreliability of child witnesses. Based upon applicable case law and his conclusion that Dr. Ihrig's testimony would "invade the province of the jury and would not substantially assist the jury," the trial court granted the State's motion.

### II. Trial

The victim was born on February 18, 1999, and was twelve years old at the time of the abuse. Her parents were divorced, and in October 2011, she was living with the

---

two, sexual battery by an authority figure, and secured a superseding indictment charging the defendant with the remaining counts.

[2] It is the policy of this Court to refer to victims of sexual abuse by their initials. For purposes of this opinion "the victim" will refer to B.E. unless otherwise noted.

defendant and her stepmother, K.E.[3] The victim identified the defendant at trial and testified she was present in court because the defendant "raped" her. She testified the defendant unexpectedly took her out of school early on October 26 claiming she had a doctor's appointment; however, she had no doctor's appointments that day. When further questioned about the reason the defendant checked her out of school that day, the victim responded, "[h]e took me out of school to molest me." The victim also testified the defendant told her that he learned about sex from his parents and that he would do the same for her.

After bringing the victim home from school, the defendant removed a condom from a drawer and made her place the condom over his penis. After the victim placed the condom on the defendant, he took her to the bedroom where he proceeded to abuse her. The victim admitted her memory of the incident was not perfect, as she was trying to "block it out," but was able to testify to the specific clothing she was wearing when the incident took place. When describing the abuse, the victim testified as follows:

> Defense Counsel: Okay. When you described -- all you said was "[the defendant] put [his penis] in me and then you said it just felt like something was in [your vagina];" is that right?
>
> The victim: That's what I said.
>
> Defense Counsel: Okay. And you didn't know whether his [penis] was hard or soft and you said, "I don't know exactly how it felt. I just tried to block it out," right?
>
> The victim: Correct.
>
> Defense Counsel: And then he got up and went and smoked a cigarette?
>
> The victim: (Nods head).

The victim stated that after the abuse, but prior to smoking the cigarette, the defendant cleaned himself up with a towel. Finally, the victim confirmed she had been unable to use tampons because they were too uncomfortable. After reporting the abuse to her mother, the victim was interviewed as part of the investigation. A videotaped forensic interview was conducted by Ms. Stringfield-Davis. The forensic interview added

---

[3] In order to further protect the victim's identity, we will utilize initials when referring to her mother.

additional details to the victim's account and was played for the jury after the victim's initial direct examination.

During the forensic interview, the victim's testimony was similar to that rendered in court. She added further details, such as the subjects she had been studying in school the day at issue. She also added that prior to making her put the condom on his penis the defendant watched a pornographic movie in her presence, and he stripped her naked before removing his own clothes. The victim stated the defendant penetrated her vagina, but she was unable to give any details as to whether the defendant's penis was turgid or flaccid or whether he ejaculated. Towards the end of the interview, the tape ended abruptly because the camera lost power.

The victim testified that the defendant told her not to tell anyone about the incident; however, she decided to tell her mother and sister about a month later. This initiated the investigation. The victim noted she struggled with the defendant's actions and continued to undergo counseling to cope with the event.

The jury also heard testimony from Denise Alexander, a social worker for Our Kids Clinic in Middle Tennessee. Ms. Alexander also conducted an interview with the victim. When Ms. Alexander asked the victim why she was there, the victim told her it was because of what the defendant had done. According to Ms. Alexander,

> [The victim] said that . . . between October 19th and sometime in November 2011, [the defendant] came home or came to school during second period and signed her out. She stated that on the way home he started to talk to her about sex. Then she said when they arrived home, he took her into the bedroom and put in a pornographic movie to play on the television. [The victim] reported [the defendant] then put her on the bed, pulled off her clothes and stated that he was going to . . . show [the victim] what her clit was. [The victim] stated that just prior to this her father asked her to put a condom on his penis . . . so [the victim] would know how to do it when she got older. [The victim] reported that she put a condom on [the defendant's] penis and he took it off. . . . [the victim] described that [the defendant] got on top of [her] and said he was going to show [her] what it was like so [she] wouldn't get hurt when [she] had a boyfriend . . . .
>
> . . .
>
> [The victim] went on to state that [the defendant] then "stuck his thing in her." [The victim] reported that [the defendant] asked . . . "how does it feel" . . . . And [the victim] replied, . . . "it feels like something is sticking

- 4 -

in me" . . . . [The victim] stated that at that point [the defendant] pulled his penis from her vagina, wiped it off, and went into the living room and smoked a cigarette.

The jury heard further testimony from Sue Ross, a pediatric nurse practitioner for Our Kids Clinic. Ms. Ross conducted a physical exam of the victim. While the exam showed no injury to the victim, Ms. Ross testified that physical injuries are often not found in cases of sexual abuse. On cross-examination, Ms. Ross was questioned about the lack of injury to victim's hymen. Ms. Ross confirmed that the use of tampons by the victim would not necessarily cause injury to the hymen. Ms. Ross then noted the victim discontinued using tampons some months prior to the abuse because she found using them too painful. Ms. Ross concluded if a small tampon hurt, a penis would hurt more.

After hearing the proof, the jury found the defendant guilty of two counts of the lesser-included offense of child abuse.

III. Sentencing

Connie Turner, with the Tennessee Board of Probation and Parole, prepared the presentence report and conducted interviews with the defendant. The presentence report indicated the defendant had multiple prior convictions for drugs, driving on a revoked license, and several traffic offenses. The defendant also had prior probation violations. While out on an appeal bond, the defendant failed a drug screening. When asked about probation, the defendant said he had no interest in it and would just rather "spend three more months in jail and be done with it." Ms. Turner testified the defendant's demeanor during her interview varied from refusing to talk to evasive when asked about exactly where he was living.

Diana Merchant, an investigator with the Department of Children's Services, testified that during a conversation about the no-contact order forbidding the defendant from contacting his children, K.E., and the mother of his children, the defendant expressed anger toward the victim's mother for "messing up his life." The defendant indicated he had obtained a gun and intended to use it to "go after" the mother of his children. Ms. Merchant further testified that the defendant violated the no-contact order on several occasions by contacting his children via Facebook and through his mother.

Stewart County Jail Deputy, Lieutenant Sam Mills testified regarding phone calls made by the defendant while he was incarcerated. Lieutenant Mills authenticated recordings of phone calls made by the defendant while in jail. During one of these calls, the defendant referred to the trial judge as "an asshole" when discussing his appeal bond.

The trial court noted that misdemeanor sentencing afforded the trial court "considerable latitude." The trial court considered the following enhancement factors: the defendant had a previous history of convictions and criminal behavior; the victim was particularly vulnerable due to her age; the defendant abused a position of trust; and the defendant committed the crimes to gratify his desire for pleasure or excitement. The trial court also took into account the fact the court had to admonish the defendant for laughing during sentencing. The court found no applicable mitigating factors.

As to consecutive sentencing, the trial court found the defendant had an extensive history of convictions and criminal behavior and determined consecutive sentencing was appropriate. Finally, as to alternative sentencing, the trial court deemed the defendant to be a poor candidate, given his disrespectful manner in court, the prior probation revocations, the revocation of his appeal bond, and his criminal history. The trial court also acknowledged the factors to be considered for alternative sentencing and observed the defendant "rank[ed] in the top five of my judicial career of defendants as the least likely to be successful for alternative sentencing." The trial court specifically found the defendant was a danger to the community, as well as a danger to himself. The trial court finally found the defendant was not amendable to rehabilitation and found all of the factors applicable to alternative sentencing under Tennessee Code Annotated section 40-35-103(1) were negative towards the defendant.

## *ANALYSIS*

I. Sufficiency of the Evidence to Support Child Abuse

When the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

In the instant case, the jury convicted the defendant of two counts of the lesser-included offense of child abuse. Child abuse requires: (1) a person knowingly, other than by accidental means, treats in such a manner a child under eighteen years of age, and (2) the child sustains an injury. Tenn. Code Ann. § 39-15-401; *State v. Ducker,* 27 S.W.3d 889 (Tenn. 2000). "Knowing" means that a "person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106. "Bodily injury"

includes "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(2).

At trial, the State presented the following testimony from the victim and other witnesses sufficient to sustain the jury's verdict. The victim testified she was in court because the defendant "raped" her when she was twelve years old. When asked on direct examination about the reason the defendant took her out of school early that day, she responded, "[h]e took me out of school to molest me." She testified that, after she was brought home, the defendant made her "put a condom on him." The victim also confirmed that while the defendant was abusing her in the bedroom she could feel his penis inside her vagina. The victim testified that she had been in counseling for about a year and would need further counseling because she "struggled" with what the defendant had done to her.

Additionally, the jury heard testimony from Ms. Alexander about her interview with the victim. She testified that the victim told her the defendant made the victim "put a condom on his penis." Ms. Alexander further testified the victim told her the defendant "stuck his [penis]" inside her, "asked her how it felt," and then withdrew his penis and cleaned himself.

Ms. Ross, who interviewed and conducted a physical examination of the victim, testified the victim complained of pain when she attempted to use tampons earlier in the year. While Ms. Ross found no signs of physical abuse, she did opine that if the victim experienced pain from the insertion of a tampon, the insertion of a penis would have been painful.

On appeal, the defendant argues the lack of evidence of physical injury during the victim's physical exam indicates insufficient evidence to support the jury's verdict of child abuse. We disagree for two reasons. First, taking the testimony in the light most favorable to the State, a jury could find there was "bodily injury" to support a finding of child abuse. The testimony of Ms. Ross indicated the victim experienced pain from the insertion of tampons and, therefore, she would have experienced pain from the insertion of a penis. Accordingly, it is reasonable for a jury to infer the victim experienced pain during the abuse. Second, this Court has held that, in the context of mitigating factors, "[p]sychological problems can constitute serious bodily injury." *State v. Gustavo Chavez*, No. W2005-02318-CCA-RM-CD, 2005 WL 3333424, at *4 (Tenn. Crim. App. Dec. 7, 2005), *perm. app. denied* (Tenn. Apr. 24, 2006) (citing *State v. Smith*, 910 S.W.2d 457, 461 (Tenn. Crim. App. 1995)). In the present case, the victim was undergoing counseling to cope with the assault. This Court has further held that "every sexual offense is physically and mentally injurious to the victim." *Chavez*, 2005 WL

3333424, at *4 (citing *State v. Kissinger*, 922 S.W.2d 482, 487 (Tenn. 1996)). Accordingly, there was proof from which a jury could find that the victim suffered bodily injury.

The defendant argues the jury's verdicts are inconsistent because the jury found him guilty of two counts of the lesser included offense of abuse of a child, despite finding him not guilty of attempted rape of a child or attempted aggravated sexual battery. The defendant appears to argue that because the jury found him not guilty of rape of a child and aggravated sexual battery, there is insufficient evidence to support any of the lesser-included offenses. As noted above, however, based upon the elements of the offense, there is sufficient evidence to sustain the jury's verdicts.

The defendant's argument, in essence, is a veiled challenge to the jury's credibility. However, the Tennessee Supreme Court stated "that '[t]he validity accorded to [inconsistent] verdicts recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation.'" *State v. Davis*, 466 S.W.3d 49, 77 (Tenn. 2015) (quoting *United States v. Zane*, 495 F.2d 683, 690 (2nd Cir. 1974)). The defendant, therefore, is not entitled to relief on this issue.

II. Consecutive Sentencing

When determining the appropriate sentence, the trial court must consider these factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant when determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103.

When the record establishes the sentence imposed by the trial court was within the appropriate range and reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The trial court must state on the record the factors it considered

and the reasons for imposing the sentence imposed. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id*. at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)). Tennessee Code Annotated section 40-35-115 provides the trial court may order sentences to run consecutively if the court finds any of the following by a preponderance of the evidence:

(1)     The defendant is a professional criminal who has knowingly devoted the defendant's life of criminal acts as a major source of livelihood;

(2)     The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of the investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with headless indifference to consequences;

(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

> (6)     The defendant is sentenced for an offense committed while on probation; or
>
> (7)     The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

For misdemeanor sentences, trial courts are "entitled to considerable latitude." *State v. Kavonda Renee Waters*, No. M2015-00324-CCA-R3-CD, 2016 WL 3094313, at *3 (Tenn. Crim. App. May 25, 2016), *no perm. app. filed*. In fact, a court "has more flexibility in misdemeanor sentencing than in felony sentencing." *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). With that flexibility, a court may place a defendant on probation after a period of confinement. *Id.*; see also Tenn. Code Ann. § 40-35-302(e)(1). A court must "fix a specific number of months, days or hours" for the sentence, and it must be consistent with the purposes and principles of sentencing. Tenn. Code Ann. § 40-35-302(b). A misdemeanor sentence has no sentence range. *State v. Webb*, 130 S.W.3d 799, 833 (Tenn. Crim. App. 2003). Nor are defendants convicted of misdemeanors presumed eligible for alternative sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998).

Based upon our review of the record, the trial court did not abuse its discretion when ordering consecutive terms. The trial court relied on the nature of the crime, the defendant's extensive criminal record, his uncooperative nature prior to sentencing, his disrespectful actions during sentencing, his violation of the no-contact order, and the defendant's own admission that he would prefer jail time to probation. Based on the foregoing, the record does not preponderate against the trial court's findings. The defendant, therefore, is not entitled to relief.

III. Admissibility of the Forensic Interview

1. Constitutionality of Tennessee Code Annotated section 24-7-123

The defendant initially challenges the constitutionality of Tennessee Code Annotated section 24-7-123, alleging it violates separation of powers within the Tennessee Constitution and the defendant's right to confront his accuser. However, this claim is without merit. The Tennessee Supreme Court has upheld section 24-7-123 as constitutional on all the grounds argued by the defendant. *See State v. McCoy*, 459 S.W.3d 1, 9-16 (Tenn. 2014) (holding Tenn. Code Ann. § 24-7-123 does not violate the rules against hearsay, the right to confrontation, or separation of powers). As a result, the defendant is not entitled to relief on this issue.

## 2. Compliance with Tennessee Code Annotated section 24-7-123

The defendant goes on to argue the forensic interview was improperly admitted because it did not meet the requirements of Tennessee Code Annotated section 24-7-123. Specifically, the defendant contends the interview violates sections 24-7-123(b)(3)(B) which requires the forensic interviewer to have "graduated from an accredited college or university with a bachelor's degree in a field related to social service, education, criminal justice, nursing, psychology or other similar profession." Tenn. Code Ann § 24-7-123(b)(3)(B). The forensic interviewer in the present case holds a business degree. Though not listed in the statute, the trial court deemed it acceptable. On appeal, the State argues a business degree is acceptable because "business transactions intimately involve the interaction of people in sometimes difficult circumstances" and therefore, a business degree is similar in nature to a degree in "social service, education, criminal justice, nursing, or psychology." *Id.* We disagree. While we will not opine on what would qualify as a "similar profession," under the doctrine of *ejusdem generis*, a business degree does not sufficiently align with the educational focus of the other listed degrees.

*Ejusdem generis* is a canon of statutory construction that dictates that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005). In this way, *ejusdem generis* limits the breadth of the general phrase so that neither the general phrase nor the specific terms are inoperative. *State v. Marshall*, 319 S.W.3d 558, 561-62 (Tenn. 2010). To read the statute to allow a forensic interviewer to have a degree in business because business transactions involve some level of personal interaction would render the degree requirement meaningless. It could be plausibly argued that almost any degree program involves some level of interpersonal interaction. This runs counter to the intent of the Tennessee State legislature which enumerated degrees that specifically focus on investigation and analysis of interpersonal interactions, not just a tangential relationship to them. We, therefore, agree that the trial court erred when admitting the forensic interview.

However, any error in admitting the forensic interview was harmless. As noted above, even without the forensic interview, the State provided overwhelming proof, including the victim's testimony, sufficient to support the jury's verdict. The defendant, therefore, is not entitled to relief on this issue.

## IV. Exclusion of Defense Psychologist Testimony

The defendant also challenges the exclusion of his expert, Dr. Ihrig, claiming the trial court erred when determining Dr. Ihrig "would not have substantially assisted the trier of fact in either understanding evidence or determining a fact at issue." The State

- 12 -

reponds that Dr. Ihrig agreed "the forensic interview did not veer from the protocol of the clinical interview" and, therefore, the trial court did not abuse its discretion when excluding the testimony.

Prior to trial, the State filed a motion in limine to exclude Dr. Ihrig's testimony. After conducting a hearing that included the testimony of Dr. Ihrig, the trial court granted the State's motion. However, the transcript of the hearing is not part of the record before this Court. Accordingly, the defendant has waived consideration of this issue. *See* Tenn. R. App. P. 24(b) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993). Nevertheless, waiver not withstanding, the trial court's order granting the State's motion in limine, which is included in the record, provides some insight into the proposed testimony of Dr. Ihrig and the trial court's decision to exclude the testimony.

A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, provided the scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue. Tenn. R. Evid. 702. An expert may base his or her opinion upon facts or data imparted to or perceived by the expert prior to or at a hearing; the facts or data need not be admissible if they are the type of facts or data reasonably relied upon by experts. Tenn. R. Evid. 703. If the underlying facts or data lack trustworthiness, the court shall disallow expert testimony based upon them. *Id.* Evidence and expert testimony regarding scientific theory must be both relevant and reliable before it may be admitted. *McDaniel v. CSX Transportation, Inc.,* 955 S.W.2d 257, 265 (Tenn.1997).

The trial court has broad discretion in resolving questions concerning the qualifications, admissibility, relevance, and competency of expert testimony. *State v. Stevens,* 78 S.W.3d 817, 832 (Tenn.2002). An appellate court should not overturn a trial court's decision in admitting or excluding a proposed expert's testimony unless it finds the trial court abused its discretion. *State v. Ballard,* 855 S.W.2d 557, 562 (Tenn.1993). "[A]n appellate court should find an abuse of discretion when it appears that the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck,* 953 S.W.2d 662, 669 (Tenn.1997).

Relying on this Court's opinion in *State v. Joseph Vermeal*, M2004-00046-CCA-R3-CD, 2005 WL 1000237 (Tenn. Crim. App. April 29, 2005), *perm. app. denied* (Tenn. Oct. 24, 2005) and Tennessee Rules of Evidence, Rule 702, the trial court concluded,

[T]he threshold question for determining whether the opinion testimony of an expert witness is admissible is whether such a witness's testimony will substantially assist the trier of fact in understanding the evidence and to determine a fact in issue.

Dr. Ibrig testified that the only issue he saw in the interviewing technique of Ms. Stringfield-Davis was that she failed to ask the victim "Did anyone tell you to say this?" Other than that, he testified that the forensic interview did not veer from the protocol of a clinical interview. The Court finds that this testimony is not in itself enough to allow the expert testimony to come in at trial and does not substantially assist the trier of fact. The Court finds that the question can be addressed on the cross examination of Ms. Stringfield-Davis.

The Court finds that Dr. Ihrig is an expert in many areas. However, this Court finds that his testimony on the matters related to the foregoing would cause too much possibility for misleading the jury, confusing the issues and invading the province of the jury.

Based on the record before us and the applicable law, we conclude that the trial court did not abuse its discretion and properly excluded the testimony of the defendant's prospective expert witness. Thus, the defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE

- 14 -